

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00012-CV

**CAROLYN NORTHCUTT, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF JAMES H. BELL,**

                                                            **Appellants**

 **v.**

**CITY OF HEARNE,**

                                                            **Appellee**

_____

**From the 82nd District Court
Robertson County, Texas
Trial Court No. 12-03-19048-CV**

## MEMORANDUM  OPINION

In one issue, appellant, Carolyn Northcutt, as personal representative of the estate

of James H. Bell, challenges a plea to the jurisdiction granted in favor of appellee, the City

of Hearne.  Because we conclude that the record does not contain sufficient jurisdictional

facts to support a waiver of governmental immunity under section 101.021 of the Texas

Civil Practice and Remedies Code, we affirm.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §

101.021 (West 2011).

# I. BACKGROUND

This case involves a tragic accident that occurred within the city limits of Hearne, Texas, and resulted in the death of James H. Bell. Specifically, in her original petition, Northcutt made the following allegations:

> On April 10, 2010, James H. Bell ("Bell") was driving his motorcycle northbound on Hwy 79 within the city limits of Hearne, Robertson County, Texas[,] at approximately 9:49 p.m. Officer Christopher Sullivan ("Sullivan"), who was acting in the course and scope of his employment with the Hearne Police Department, had hidden his patrol car in a private driveway (with the patrol car lights off), setting up a speed trap. As Mr. Bell approached the speed trap on his motorcycle, Sullivan pulled the patrol vehicle out of the private driveway to pursue a northbound vehicle (traveling ahead of Mr. Bell's motorcycle northbound on Hwy 79) for a traffic violation. Sullivan flipped on his lights and pulled the patrol vehicle out of the private driveway onto the shoulder in such a way to cause Bell to swerve to avoid contact. As a result of such evasive action, Bell lost control of his motorcycle and it flipped onto its side, throwing Bell onto the highway. Defendant Ewing, traveling northbound on Hwy 79, failed to take evasive action and struck Bell.[1] Bell died as a result of the accident.

Northcutt asserted a negligence cause of action against the City and sought wrongful-death and survival damages. Additionally, Northcutt alleged that the City waived governmental immunity under section 101.021(1) of the Texas Civil Practice and Remedies Code—otherwise known as the Texas Tort Claims Act ("TTCA"). *See id.* § 101.021(1).

In response to Northcutt's original petition, the City filed an original answer denying Northcutt's allegations and asserting governmental immunity. Thereafter, the

---

[1] Rita L. Ewing was the driver of the oncoming vehicle that struck Bell. The record reflects that the trial court granted summary judgment in favor of Ewing. Northcutt does not challenge the trial court's summary-judgment order as to Ewing. Accordingly, Ewing is not a party to this appeal.

City filed a plea to the jurisdiction, arguing, among other things, that Northcutt failed to plead sufficient jurisdictional facts to support the waiver of governmental immunity. After a hearing, the trial court granted the City's plea to the jurisdiction, and this appeal followed.

## II.     APPLICABLE LAW

### A.     Plea to the Jurisdiction

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject-matter jurisdiction. *Id.* Whether the trial court has subject-matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228. If a plea to the jurisdiction challenges the existence of jurisdictional facts, as is the case here, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do, even if those facts implicate the merits of the cause of action. *Id.* at 227.

A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a tradition motion for summary judgment. *Id.* at 228; *see* TEX. R. CIV. P. 166a(c). The governmental unit is required to meet the summary-judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Miranda*, 133 S.W.3d at 228. Once the governmental unit meets its burden, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the factfinder. *Id.* at 227-28. But, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. "In considering this evidence, we 'take as true all evidence favorable to the nonmovant' and 'indulge every reasonable inference and resolve any doubts in the nonmovant's favor.'" *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (quoting *Miranda*, 133 S.W.3d at 228).

## B. Immunity

Sovereign immunity protects the State and its various divisions from lawsuits for money damages. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Governmental immunity provides similar protections to the political subdivisions of the State, such as counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity encompasses two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity; and (2) immunity from suit, which bars suit

against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its liability is not disputed. *IT-Davy*, 74 S.W.3d at 853. Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue. *Id.* A plaintiff who sues the State must establish the State's consent to suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *see Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Otherwise, sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Jones*, 8 S.W.3d at 638. Furthermore, municipalities, such as the City, enjoy a "'heavy presumption in favor of immunity.'" *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 848 (Tex. 2009) (quoting *Nueces County v. San Patricio County*, 246 S.W.3d 651, 653 (Tex. 2008)).

### III. ANALYSIS

In her sole issue, Northcutt argues that the trial court erred in granting the City's plea to the jurisdiction because there is a fact issue as to whether or not the City is liable for the negligent operation of a motor vehicle by Officer Sullivan. In support of her argument, Northcutt contends that the record evidence demonstrates that the City waived immunity under the TTCA. We disagree.

Here, the asserted source of waiver is the TTCA. The Texas Supreme Court has stated that the TTCA "provides a limited waiver of governmental immunity." *Alexander v. Walker*, 435 S.W.3d 789, 790 (Tex. 2014) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.023 (West 2011)). In arguing that the City waived governmental immunity, Northcutt

relies on section 101.021 of the Texas Civil Practice and Remedies Code, which provides the following:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act of omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

The term "arises from," as used in the TTCA, requires a nexus between an injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle. *Whitley*, 104 S.W.3d at 543. "This nexus requires more than mere involvement of property." *Id.* "Rather 'the [vehicle]'s use must have actually caused the injury." *Id.* (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001). "Thus, as with the condition or use of property, the operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1987)). Essentially, the question before this Court is

whether the evidence creates a fact question on the nexus or causal relationship between Sullivan's conduct and Bell's accident and death.

Proximate cause consists of two components—cause in fact and foreseeability. *HMC Hotel Props. II Ltd. P'ship v. Keystone-Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009)). "The cause-in-fact element is satisfied by proof that (1) the act was a substantial factor in bringing about the harm at issue, and (2) absent the act . . . the harm would not have occurred." *Id.* (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 122). Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Mo. Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex. 1977)). "These elements cannot be established by mere conjecture, guess, or speculation." *HMC Hotel Props. II Ltd. P'ship*, 439 S.W.3d at 913 (citing *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)).

In arguing that Officer Sullivan's actions caused Bell's accident, Northcutt directs us to an investigation report, which was admitted as an exhibit at the hearing on the City's plea to the jurisdiction.[2] But, it is important to recognize that the trial court

---

[2] In his report, Trooper Scott Swick of the Texas Department of Public Safety provided the following narrative regarding his opinion of what happened:

> #1 [Bell's motorcycle] NB on US 79, entering the Hearne city limits. There was a Hearne patrol unit parked in a private drive on the NB side of the roadway, observing vehicular traffic. There was also a truck in front of #1 that was displaying a defective head lamp. The Hearne patrol unit turned out of the private drive and onto the NB improved shoulder,

sustained an objection made by the City as to hearsay contained in the investigation report. The trial court admitted the report and stated that it would "disregard any hearsay statements. I will look more at the time, date, and things of that nature." Northcutt did not assert the applicability of a hearsay exception, nor does she complain about the evidentiary ruling on appeal. *See* TEX. R. EVID. 803(8); *see also McRae v. Echols*, 8 S.W.3d 797, 799-800 (Tex. App.—Waco 2000, pet. denied). Accordingly, the investigating trooper's narrative opinion in the report on how the crash occurred is not before us.

Moreover, the record reflects that Northcutt neither submitted evidence nor filed a response to the City's plea to the jurisdiction, despite having the opportunity to do so. *See Kirwan*, 298 S.W.3d 622; *see also Miranda*, 133 S.W.3d at 227. As such, the only evidence that is before this Court is Officer Sullivan's affidavit describing the incident. And in his affidavit, Officer Sullivan stated the following, in pertinent part:

> 3. On the evening of April 10, 2010, at approximately 9:50 p.m., I was on duty as a patrol officer with the City of Hearne Police Department and was monitoring traffic on the south side of the City of Hearne along Highway 79. To place myself in a position where I could observe traffic coming into the City, I backed my patrol car into a short gravel driveway that led from Highway 79 into the GATX rail yard. From this position, I could see, to my

in preparation to allow #1 to pass his location, so he could conduct a legal and valid traffic stop on the truck. Thinking that the patrol unit was going to pull out in front of him, the driver of #1 applied its brakes and in doing so lost control, causing #1 to fall onto it's [sic] right side. The driver of #1 was ejected and came to rest in the NB lane of traffic. #1 came to rest on it's [sic] right side in the NB lane of traffic, facing S.

The record does not contain evidence as to Bell's thoughts prior to losing control of his motorcycle. As such, any commentary on Bell's thoughts is speculative and not probative. *See Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 n.5 (Tex. 2012) (noting that speculation is the act or practice of theorizing about matters over which there is no certain knowledge and that a causation finding cannot be supported by mere conjecture, guess, or speculation).

left, in a southerly direction down Highway 79. From that location, I could see motor vehicle traffic as it entered the City of Hearne. I sat with my window down.

4. At approximately 9:50 p.m., on April 10, 2010, I observed a motor vehicle with only one functioning headlight approaching from the south. Behind that motor vehicle, I could see another motor vehicle coming and a motorcycle behind the second motor vehicle. As the motor vehicle with the non-functioning headlight approached, I put my car into drive with my headlights and taillights on. As that motor vehicle passed me, I started moving slowly forward and turned right very slowly (going north) onto the shoulder of Highway 79. The second motor vehicle that I observed behind the motor vehicle with the defective headlight passed safely. As I had seen the motorcycle behind the second motor vehicle, I stayed on the shoulder of Highway 79 moving very slowly with my headlights and taillights operating waiting for the motorcycle to pass. My window was rolled down. I heard the sound of metal and plastic colliding with the ground. I looked in my rearview mirror to see that the motorcycle had fallen to the pavement approximately 100 feet behind my vehicle. When I heard the sound of the motorcycle crash on the road, I was still sitting on the shoulder of Highway 79 with my headlights and taillights on. I did not pull onto Highway 79 until after I heard the sound of the motorcycle accident and saw the motorcycle rider on the ground. At that time, I pulled onto the highway, turned on my overhead emergency lights and made a U-turn to render aid to the driver of the motorcycle.

5. As I was aware of the two motor vehicles and the motorcycle following, I took care to keep my vehicle well on the shoulder and off of the traffic lane of Highway 79 until after the motorcycle passed. Neither the first motor vehicle (with the non-functioning headlight) nor the second motor vehicle had to take any evasive action to avoid my car as they passed me on Highway 79. My car was on the shoulder as the motorcycle approached my position. At no time between the time that I first observed the motor vehicle with the non-functioning headlight until after the motorcycle accident did I pull into the traffic lane of Highway 79. The motorcycle did not contact or collide with my vehicle.

Without a number of unreasonable assumptions and stacked inferences, nothing in Officer Sullivan's affidavit creates a fact question as to whether or not Officer Sullivan's actions were negligent or actually caused Bell's injury. *See Whitley*, 104 S.W.3d at 543;

*White*, 46 S.W.3d at 869; *Hotel Props. II Ltd. P'ship*, 439 S.W.3d at 913; *see also Ron v. Airtran Airways*, 397 S.W.3d 785, 800 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (Frost, J., dissenting) ("This court should not find a genuine fact issue precluding summary judgment by unreasonable inferences from the summary-judgment evidence or by piling one inference upon another." (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968); *Engstrom v. First Nat'l Bank of Eagle Lake*, 936 S.W.2d 438, 445 (Tex. App.—Houston [14th Dist.] 1996, writ denied))). In fact, Officer Sullivan's statements undermine Northcutt's allegation that Bell's injuries were caused by the evasive actions taken to avoid contact with Officer Sullivan. This is especially true given that Officer Sullivan did not observe either of the other two vehicles on Highway 79—both of which were closer to him—take evasive action to avoid his patrol car and that Bell was 100 feet behind Officer Sullivan's vehicle. In any event, it was Northcutt's burden to provide evidence demonstrating a causal nexus and, therefore, a waiver of governmental immunity based on Officer Sullivan's actions on the night in question; however, Northcutt has failed in meeting this burden. *See Miranda*, 133 S.W.3d at 228; *see also Dallas County v. Logan*, 420 S.W.3d 412, 423 (Tex. App.—Dallas 2014, pet. denied) (op. on remand) ("The plaintiff bears the burden to affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." (citing *Whitley*, 104 S.W.3d at 542; *City of Irving v. Seppy*, 301 S.W.3d 435, 443 (Tex. App.—Dallas 2009, no pet.))).

Nevertheless, in arguing on appeal that she satisfied her burden, Northcutt relies heavily on the Texas Supreme Court's recent decision in *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922 (Tex. 2015) (per curiam). After reviewing the *Ryder*

opinion, we find the case to be distinguishable from the case at bar. First, we note that, in this case, the City challenged the existence of jurisdictional facts, which necessitated an examination of the evidence to determine whether the trial court has subject-matter jurisdiction. On the other hand, *Ryder* focused on the sufficiency of the pleadings and did not involve a challenge to the existence of jurisdictional facts. *Id.* at 927-31.

Second, though the *Ryder* court did examine the alleged facts to an extent, the quantum of alleged facts in *Ryder* is much more substantial than the evidence in the instant case. In *Ryder*, much of the relevant facts were admitted and, thus, undisputed. Specifically, in its third-party negligence claim against the County, Ryder alleged that Fayette County Deputy Sheriff Randy Thumann's act of positioning his cruiser facing eastbound traffic with its headlights and high-beam spotlight illuminated caused an accident. *Id.* at 926. The County conceded that Deputy Sheriff Thumann had, in fact, positioned his cruiser facing eastbound traffic with its headlights and high-beam spotlight illuminated—an arguably negligent act. *Id.* Here, Northcutt has not presented any probative evidence demonstrating that Officer Sullivan negligently operated a motor vehicle and thereby caused the accident. And especially given that the uncontroverted evidence shows that the two vehicles ahead of Bell did not take evasive action and that Bell was 100 feet behind Officer Sullivan's vehicle, at best, we can only state that Northcutt's complaints about Officer Sullivan's actions seem to be more properly classified as a condition that made the accident possible, rather than the actual cause of the accident itself. *See Whitley*, 104 S.W.3d at 543 (stating that "the operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that

makes the injury possible.'" (quoting *Bossley*, 968 S.W.2d at 343)); *see also City of Dallas v. Hillis*, 308 S.W.3d 526, 532 (Tex. App.—Dallas 2010, pet. denied) ("When an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." (citing *Bossley*, 968 S.W.2d at 343)).

Therefore, based on the foregoing, we cannot say that the record contains sufficient jurisdictional facts to support the waiver of governmental immunity under section 101.021 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. As such, we cannot conclude that the trial court erred in granting the City's plea to the jurisdiction. *See Kirwan*, 298 S.W.3d at 622; *see also Miranda*, 133 S.W.3d at 226. We overrule Northcutt's sole issue on appeal.

## IV.   CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Justice Davis dissenting)
Affirmed
Opinion delivered and filed July 30, 2015
[CV06]

